1   LAURA HERNANDEZ, State Bar No. 344641
    WILSON SONSINI GOODRICH & ROSATI
2   Professional Corporation
    One Market Plaza, Spear Tower, Suite 3300
3   San Francisco, CA 94105-1126
    Telephone: (415) 947-2000
4   Facsimile: (866) 974-7329
    Email: lhernandez@wsgr.com
5
    JEREMY P. AUSTER (*admitted pro hac vice*)
6   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
7   1301 Avenue of the Americas, 40th Floor
    New York, NY 10019-6022
8   Telephone: (212) 999-5800
    Facsimile: (866) 974-7329
9   Email: jauster@wsgr.com

10  *Counsel for Defendant YouTube, LLC*

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13
    DAVID A. STEBBINS,                    )   Case No.: 4:25-cv-04499-JSW
14                                        )
              Plaintiff,                  )   **YOUTUBE, LLC'S NOTICE OF**
15                                        )   **MOTION AND MOTION TO**
        v.                                )   **DISMISS**
16                                        )
    JOHN DOE et al.,                      )   Action Filed: May 23, 2025
17                                        )
              Defendants.                 )
18                                        )
                                          )
19  _____  )

20

21

22

23

24

25

26

27

28

1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS**:

2    **PLEASE TAKE NOTICE** that on November 14, 2025 at 9:00 A.M., or as soon thereafter

3    as the matter may be heard, in the United States District Court, Northern District of California,

4    Oakland Courthouse, Courtroom 5, 2nd Floor, located at 1301 Clay Street, Oakland, California

5    94612, before the Honorable Jeffrey S. White, Defendant YouTube, LLC ("YouTube") will and

6    hereby moves the Court to dismiss Plaintiff David A. Stebbins' Complaint (Dkt. 4) against

7    YouTube with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8(a). This

8    Motion is based on this Notice of Motion, the concurrently filed Memorandum of Points and

9    Authorities, the concurrently filed Request for Judicial Notice and Consideration of Materials

10   Incorporated by Reference ("RJN"), the Declarations of Aamir Hasnat and Jeremy P. Auster, Esq.

11   and accompanying exhibits, the pleadings and records on file in this action, all other matters of

12   which this Court may take judicial notice, and such other argument as may be heard by the Court.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................. 6

I.    STEBBINS HAS NO VIABLE INFRINGEMENT CLAIMS AGAINST
      YOUTUBE ................................................................................................................... 6

      A.    Stebbins Does Not And Cannot Assert A Viable Claim Against YouTube ........... 6

      B.    Stebbins Cannot Obtain Relief Without A Substantive Claim ............................... 7

      C.    Stebbins Dooms His Case By Admitting YouTube's "Safe Harbor
            Immunity" .............................................................................................................. 8

II.   CREETOSIS' LIVESTREAMS ARE FAIR USES OF STEBBINS' VIDEOS ................ 9

      A.    Creetosis' Videos Are Highly Transformative ...................................................... 10

      B.    Stebbins' Videos Are Far from the Core of Copyright ......................................... 12

      C.    Creetosis' Uses Are Reasonable in Relation to the Transformative Purpose ....... 13

      D.    Creetosis' Videos Do Not Affect Any Market for Stebbins' Videos .................... 14

CONCLUSION ......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alpha Inv., LLC v. Zynga, Inc.*,
  2012 WL 832447 (N.D. Cal. Mar. 12, 2012) .......................................................... 7

*Andy Warhol v. Goldsmith*,
  598 U.S. 508 (2023) ................................................................................. 10, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 6

*Azadpour v. Sun Microsystems, Inc.*,
  2007 WL 2141079 (N.D. Cal. July 23, 2007) ........................................................ 8

*Brunson v. Cook*,
  2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) ..................................................... 13

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
  2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ....................................................... 7, 8

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ........................................................................... 10, 13, 14

*City of Inglewood v. Teixeira*,
  2015 WL 5025839 (C.D. Cal. Aug. 20, 2015) ...................................................... 11

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ......................................................................... 6

*Equals Three, LLC v. Jukin Media, Inc.*,
  139 F. Supp. 3d 1094 (C.D. Cal. 2015) .............................................................. 11

*Fisher v. Dees*,
  794 F.2d 432 (9th Cir. 1986) ......................................................................... 14

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
  642 F. Supp. 2d 1012 (N.D. Cal. 2009) ............................................................... 7

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021) ................................................................................... 9, 14

*Hosseinzadeh v. Klein*,
  276 F. Supp. 3d 34 (S.D.N.Y. 2017) ...................................................... 11, 13, 15

*Hughes v. Benjamin*,
  437 F. Supp. 3d 382 (S.D.N.Y. 2020) ............................................................... 11

*Hustler Magazine Inc. v. Moral Majority Inc.*,
  796 F.2d 1148 (9th Cir. 1986) .................................................................... 10, 12

*Jensen v. Quality Loan Serv. Corp.*,
    702 F. Supp. 2d 1183 (E.D. Cal. 2010) ................................................................. 7

*Long v. Dorset*,
    369 F. Supp. 3d 939 (N.D. Cal. 2019) .................................................................. 8

*Mashrique v. JPMorgan Chase Bank, N.A.*,
    2023 WL 3322572 (N.D. Cal. May 9, 2023) ........................................................ 8

*Mattel Inc. v. Walking Mt. Prods.*,
    353 F.3d 792 (9th Cir. 2003) ............................................................................... 13

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ................................................................................. 9

*MGM Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................................................... 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ............................................................................. 13

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ................................................................................. 6

*Santos v. Kimmel*,
    745 F. Supp. 3d 153 (S.D.N.Y. 2024) ................................................................ 11

*Savage v. Council on American-Islamic Relations, Inc.*,
    2008 WL 2951281 (N.D. Cal. July 25, 2008) .................................................... 14

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*,
    2009 WL 2157573 (N.D. Cal. July 16, 2009) ...................................................... 9

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ............................................................................. 14

*Sony Comput. Ent't Am., Inc. v. Bleem, LLC*,
    214 F.3d 1022 (9th Cir. 2000) ............................................................................... 9

*Stebbins v. Alphabet Inc.*,
    2025 WL 2233208 (N.D. Cal. July 2, 2025) .............................................*passim*

*Stebbins v. Doe*,
    No. 24-mc-80179-HSG ......................................................................................... 2

*Stebbins v. Google LLC*,
    2023 WL 6139454 (N.D. Cal. Aug. 31, 2023) ............................................. 2, 9, 12

*Stebbins v. Rebolo*,
    2024 WL 4982985 (N.D. Cal. Dec. 4, 2024) ........................................................ 9

*Totally Her Media, LLC v. BWP Media United States, Inc.*,
    2015 WL 12659912 (C.D. Cal. Mar. 24, 2015) .................................................... 7

*Tur v. YouTube, Inc.*,
    2007 WL 4947612 (C.D. Cal. June 20, 2007) ...................................................... 7

1

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ................................................................................. 6

2

*Wallace v. Fed. Bureau of Prisons*,
    2020 WL 4926539 (E.D. Ky. Aug. 20, 2020) ......................................................... 8

3

4    *Whitehead v. Millennium Films*,
    2016 WL 7638185 (C.D. Cal. May 4, 2016) ........................................................... 7

5

**STATUTES**

6

17 U.S.C. § 101 ................................................................................................................ 13

7

17 U.S.C. § 107 ........................................................................................................ *passim*

8

17 U.S.C. § 512(c) ............................................................................................................ 8

9

17 U.S.C. § 512(j) ....................................................................................................... 7, 8

10

**RULES**

11

Fed. R. Civ. P. 8(a) ......................................................................................................... 6

12

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 6, 9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>INTRODUCTION</u>**

Plaintiff David Stebbins—a twice-declared vexatious litigant—continues to burden YouTube and this Court with frivolous copyright claims targeting fair-use criticism. The Ninth Circuit and this Court have already dismissed most of Stebbins' claims, including the one claim for which Stebbins alleged that YouTube is "vicariously liable." Complaint ("Compl.") (Dkt. 4) ¶ 58. Stebbins' three remaining claims are alleged ***solely*** against "Creetosis," a third-party YouTube user who allegedly infringed Stebbins' copyrighted videos by using them in "livestream reaction videos" that Creetosis posted to YouTube. *Id.* ¶ 68. Stebbins' continued pursuit of YouTube as a "nominal defendant" in his lawsuit against Creetosis validates the propriety of his vexatious litigant tag. Dkt. 4-1 at 2.

***First***, YouTube should be dismissed with prejudice because Stebbins's whittled-down Complaint does not—and cannot—assert an actual legal claim against YouTube. Stebbins admits that his remaining claims are not alleged against YouTube, but maintains that "YouTube LLC still should be included as a nominal defendant so I can obtain the injunctive relief I request in … the Complaint." *Id.* But Stebbins cannot obtain a remedy—whether an injunction or damages—absent a viable cause of action against YouTube. He does not allege one. Nor could he, given his admissions that YouTube "removed" Creetosis' videos in response to his takedown notices under the Digital Millennium Copyright Act ("DMCA"), Compl. ¶¶ 42, 45, 47, and that "YouTube's safe harbor immunity" under the DMCA "is undisputed," Dkt. 4-1 at 2.

***Second***, even if Stebbins' claims were alleged against YouTube, they should be dismissed with prejudice because Creetosis' reaction videos are quintessential non-infringing fair uses under the four-factor test set forth in Section 107 of the Copyright Act. Indeed, Stebbins admits that his claims in this case are "effectively identical in merit" to his claims in the Related Case (Dkt. 26 ¶ 3), which this Court dismissed with prejudice because Creetosis' "critical" "reaction video[s]" were "highly transformative," "at the heart of the fair use doctrine," and "fair use as a matter of law." *Stebbins v. Alphabet Inc.*, No. 22-CV-00546-JSW ("Related Case"), 2025 WL 2233208, at *4-6 (N.D. Cal. July 2, 2025). Creetosis' videos in this case follow the same critical fair-use playbook.

YouTube's defenses are readily apparent from the Complaint and matters judicially noticeable. The Court should thus dismiss Stebbins' latest vexatious copyright complaint.

## BACKGROUND

***None of Stebbins' Remaining Claims Is Alleged Against YouTube.*** Stebbins filed his Complaint on June 21, 2024, asserting "five (5) counts of copyright infringement" ("Counts 1-5") and state-law claims against Creetosis.[1] Compl. at 1. Count 5 is the *only* claim alleged against YouTube. *See id.* ¶ 58 (alleging YouTube "has become vicariously liable for this count of infringement" for refusing to remove Creetosis' video).

Pursuant to the vexatious litigant order, *Stebbins v. Google LLC*, 2023 WL 6139454 (N.D. Cal. Aug. 31, 2023), Judge Gilliam screened and barred the Complaint for being wholly "frivolous." *Stebbins v. Doe*, No. 24-mc-80179-HSG, Dkt. 18. Stebbins appealed, and the Ninth Circuit affirmed the dismissal of Count 5 and all of the state-law claims, but reversed and remanded to "permit the proposed complaint to proceed only as to [Counts 1-4]," while "express[ing] no view on the merits of Stebbins's claims or the availability of any defenses." Dkt. 2 at 3.

On remand, this Court screened and dismissed Count 1 with prejudice because it concerned a Creetosis video that the Court held was a fair use in the Related Case. Dkt. 15 at 3-4

Counts 2-4 are Stebbins' only remaining claims. None is alleged against YouTube. *See* Compl. ¶¶ 38-53. In fact, Stebbins admits that YouTube "removed" or "took down" the allegedly infringing Creetosis videos that are the subject of Counts 2 and 3 in response to his "DMCA Takedown" notices, *id.* ¶¶ 42, 45, 47, and alleges that Creetosis "deleted" the Count 4 videos "before YouTube had enough time to process the takedown request," *id.* ¶ 53. Stebbins concedes in the screening letter accompanying his Complaint that for these "counts of infringement ... YouTube's safe harbor immunity" under the DMCA is "undisputed." Dkt. 4-1 at 2.

Nonetheless, Stebbins asserts that YouTube "still should be included as a nominal defendant so I can obtain ... injunctive relief." *Id.; see* Compl. ¶ 159. He also alleges that YouTube should be "jointly liable for [] damages," "especially" for the dismissed Count 5. Compl. ¶ 152.

---

[1] The Complaint (at 8-13) labels Counts 1-5 as Infringements #1, #2, #3A and #3B, #4, and #5.

***Stebbins' Claims Against Creetosis Target Fair-Use Criticism.*** Stebbins' remaining infringement claims against Creetosis concern "reaction videos" (*id.* ¶ 31) that, according to Stebbins, are "effectively identical" to Creetosis' videos in the Related Case. Dkt. 26 ¶ 3. In that case, Creetosis' "sprawling," hours-long livestreams played Stebbins' video "for seconds at a time before pausing to respond [to] and critique" Stebbins' "analysis," "opinions," and "factual contentions" regarding a video game, as well as his video-editing choices. *Stebbins v. Alphabet*, 2025 WL 2233208, at *4-5 (also describing "frequent cross-chatter" among Creetosis and their co-hosts and "engagement with a live virtual audience"). This Court explained at length why such "reaction video[s]" were "highly transformative" works created "with the purpose of reviewing or mocking" Stebbins' video. *Id.* at *3-7. The same is true of Creetosis' videos here.

**Count 2 (Dark Souls Reaction)**. On January 14, 2020, Stebbins posted a 19-minute YouTube video titled, "Dark Souls Retrospective - Dark Souls Sucks, and Here's Why," available at: https://www.youtube.com/watch?v=HoTjSldDT3Y. Compl. ¶ 11; Request for Judicial Notice ("RJN") at 1. Stebbins' video plays "Dark Souls" gameplay footage while he provides voiceover opinions about the game. *See* Compl. ¶ 11. As alleged, on March 21, 2022, Creetosis posted the Dark Souls Reaction video, a five-and-a-half-hour livestream that Creetosis hosted with four other commentators. Compl. ¶ 38; Declaration of Aamir Hasnat ("Hasnat Decl.") Ex. A. For the first hour, they comment on Stebbins (and his litigation history) without showing Stebbins' video on screen. Hasnat Decl., Ex. A at 0:00:00–1:13:40. Over the next *four hours*, they play Stebbins' video in exceptionally short segments (often mere seconds), and repeatedly pause playback for much longer segments of directly responsive commentary and criticism about Stebbins' opinions of the game, and then briefly resume playback before pausing again, and on and on (just like the Related Case). *See id.* at 01:13:41–05:16:17.[2] The paused commentary accounts for roughly 90%

---

[2] The following are illustrative examples from the Dark Souls Reaction video denoting the approximate length of alternating segments of playback of Stebbins' video ("V") and paused commentary ("C"), and describing generally the nature of the paused commentary: 01:15:58–01:16:01 ("V"; 3 seconds), 01:16:02-01:16:52 ("C"; 50 seconds, criticizing background noise in Stebbins' video); 01:16:53-01:17:17 ("V," 24 seconds), 01:17:18-01:18:57 ("C," 1 minute 39 seconds, similar); 01:29:40-01:29:54 ("V"; 14 seconds), 01:29:55-01:39:35 ("C"; 9 minutes 40 seconds, critiquing Stebbins' opinion of game and using memes to mock Stebbins' review);

(continued...)

1  of this four-hour segment. Stebbins' video is never the only visual on screen; there are also circular

2  images depicting the commentators' icons at the bottom of the screen, and on the right-hand side

3  there is a full-length "live chat" panel showing a stream of real-time comments by third-party

4  YouTube users. *See generally id.*

5      **Count 3 (Elden Ring Reaction)**. On March 23, 2022, Stebbins posted a roughly four-

6  minute video to his YouTube channel titled, "Elden Ring Sucks, and Here's Why," available at:

7  https://www.youtube.com/watch?v=m0iT_TFcaFE. Compl. ¶ 13; RJN at 1. The short video

8  depicts gameplay footage from "Elden Ring" and Stebbins' voiceover explanation about why "I

9  can safely say that I hate this game even though I've never played it." *Id.* at 00:01:11-00:01:17;

10  Compl. ¶ 13. As alleged, on March 23, 2022, Creetosis posted the Elden Ring Reaction, a fifty-

11  seven minute livestream that "reacted to" Stebbins' video, and criticizes Stebbins' credibility as a

12  reviewer of a game he did not play. Compl. ¶ 43; *see generally* Hasnat Decl., Ex. B. After YouTube

13  removed the video in response to Stebbins' takedown notice, Creetosis "reposted" the same video,

14  which YouTube also removed. Compl. ¶¶ 43-47 ("Infringement #3A" and "3B"). *See* Hasnat

15  Decl., Exs. B (original video), C ("reposted" copy). Creetosis employs the same, now-familiar

16  pattern (this time without co-hosts): short segments of playback followed by much longer segments

17  of paused commentary, which account for roughly 90% of the runtime.[3] Here too, a "live chat"

18  panel shows third-party comments. *Id.* Stebbins' video is not visible for the final six minutes. *See*

19  *id.* at 00:51:23-00:57:44.

20

21

---

22  02:36:05-02:36:24 ("V," 19 seconds), 02:36:25-02:52:44 ("C," 16 minutes 19 seconds, criticizing
   Stebbins' editing and gameplay skills, reading and reacting to livestream viewer comments about
23  Stebbins' videos, and theorizing why Stebbins made a video "private"); 04:08:02-04:08:08 ("V; 6
   seconds), 04:08:09-04:16:19 ("C"; 8 minutes 10 seconds, critiquing Stebbins' opinions regarding
24  character arcs in the game and offering their opinions of the arcs).
   [3] The following are illustrative examples from the Elden Ring Reaction video: 00:08:12-00:08:18
25  ("V"; 6 seconds), 00:08:19-00:10:36 ("C"; 2 minutes 17 seconds, critiquing Stebbins' approach to
   reviewing a game he never played); 00:13:09-00:13:18 ("V"; 9 seconds), 00:13:19-00:15:04 ("C";
26  1 minute 45 seconds, disagreeing with Stebbins' opinions regarding the game's producer and
   suggesting it is baseless for Stebbins to "automatically hate" a game "because the fanbase is
27  toxic"); 00:15:19-00:15:28 ("V", 9 seconds), 00:15:29-00:20:53 ("C"; 5 minutes 24 seconds,
   responding to Stebbins' description of reaction to his prior videos and criticizing those same
28  videos); 00:39:52-00:39:56 ("V"; 4 seconds), 00:39:57-00:44:14 ("C", 4 minutes 17 seconds,
   critiquing Stebbins' lack of "criticial analysis" and credibility).

1         **Count 4 (Ducking Reaction)**. On May 16, 2022, Stebbins posted a twenty-two minute

2   video titled, "Maybe YOU'RE the ones ducking ME!," available at:

3   https://www.youtube.com/watch?v=5bxs8fq9rl8. Compl. ¶ 15 (the "Ducking Video"); RJN at 2.

4   Stebbins again plays footage from a third-party game, but this time his voiceover commentary

5   "was dedicated to discussing real-life events that I was experiencing at the time, rather than video

6   games." Compl. ¶ 16. Specifically, Stebbins gives his "opinions" (*id.*) about, *inter alia*, various

7   online feuds with Creetosis and other YouTubers and their past criticism. *See* RJN at 2. Stebbins

8   alleges that between May 18 and May 25, 2022, Creetosis posted the "Ducking Reaction," a four-

9   part livestream series in which Creetosis and other hosts react to Stebbins' Ducking Video. Compl.

10  ¶ 51; *see* Declaration of Jeremy P. Auster ("Auster Decl.") Exs. 1 (Part 1), 4 (Part 2), 6 (Part 3), 8

11  (Part 4). Each Creetosis video plays only a portion of Stebbins' video,[4] and each employs the same

12  pattern of brief video playback followed by much longer segments of paused reaction, during

13  which the hosts engage in wide-ranging criticism and commentary about Stebbins, his Ducking

14  Video, his feuds with other YouTubers, and his reactions to their past criticism.[5] A "live chat"

15  panel showing third-party comments is again visible. *See id.* The total runtime of the series is just

16  under six hours, approximately five of which are spent reacting to Stebbins' video. *See* Auster

17

18

---

19  [4] Part 1 plays roughly 6 minutes, Part 2 plays just over 3 minutes, Part 3 plays five-and-a-half minutes, and Part 4 plays the remaining eight minutes.

20  [5] The following are illustrative examples from the Ducking Reaction series: **Part 1** at 01:04:57-01:05:10 ("V"; 13 seconds), 01:05:11-01:07:54 ("C"; 2 minutes 43 seconds, arguing Stebbins is

21  "malicious[]" towards other YouTubers); 01:13:08-01:13:23 ("V"; 15 seconds), 01:13:23-01:15:49 ("C"; 2 minutes 26 seconds, criticizing volume and music); 01:21:31-01:21:40 ("V"; 9

22  seconds), 01:21:41-01:23:29 ("C"; 1 minute 48 seconds, criticizing Stebbins' response to Creetosis' criticism and refusal to "debate"); **Part 2** at 00:23:56-00:24:03 ("V"; 7 seconds),

23  00:24:04-00:26:11 ("C"; 2 minutes 7 seconds, criticizing audio and visual transitions); 00:26:13-00:26:20 ("V"; 7 seconds), 00:26:20-00:29:09 ("C"; 2 minutes 49 seconds, disagreeing with

24  Stebbins' harassment claim); 00:49:43-00:49:50 ("V"; 7 seconds), 00:49:51-00:51:20 ("C"; 1 minute 29 seconds, mocking Stebbins for editing choice); **Part 3** at 00:30:22-00:30:28 ("V"; 6

25  seconds), 00:30:28-00:34:46 ("C"; 4 minutes 18 seconds, disagreeing with Stebbins' self-assessment); 01:15:33-01:15:47 ("V"; 14 seconds), 01:15:48-01:17:02 ("C"; 1 minute 14 seconds,

26  criticizing Stebbins' use of "legal terms"); 01:27:07-01:27:14 ("V"; 7 seconds), 01:27:15-01:31:16 ("C"; 4 minutes 1 second, disagreeing with Stebbins' opinion of how other YouTubers treat him);

27  **Part 4** at 00:05:22-00:05:30 ("V"; 8 seconds), 00:05:31-00:11:31 ("C"; 6 minutes, responding to Stebbins' critique of Creetosis' reaction video format); 00:14:14-00:14:25 ("V"; 11 seconds),

28  00:14:26-00:19:49 ("C"; 5 minutes 23 seconds, disagreeing with Stebbins' characterization of Creetosis' analysis of Stebbins' videos).

1    Decl., Exs. 1 at 00:40:20–01:34:56; 4 at 00:02:46–01:15:52; 6 at 00:10:15–01:31:16; 8 at 0:00:00

2    – 01:41:32.

3                                    **ARGUMENT**

4    **I.    STEBBINS HAS NO VIABLE INFRINGEMENT CLAIMS AGAINST YOUTUBE**

5          **A.    Stebbins Does Not And Cannot Assert A Viable Claim Against YouTube**

6          YouTube should be dismissed because the Complaint does not assert any claims against it.

7    Count 5, the only claim against YouTube, has been dismissed. Compl. ¶ 58; *supra* at 2. Stebbins'

8    three remaining claims are pled against Creetosis only. *See* Compl. ¶¶ 26-29, 38-42, 43-50, 51-53.

9    Because Stebbins does not attempt to allege any copyright infringement claim against YouTube,

10   his Complaint fails under Rules 8(a) and 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

11         YouTube's dismissal should also be with prejudice, because Stebbins has no basis for

12   charging YouTube with infringement. Courts "recognize three doctrines of copyright liability:

13   direct copyright infringement, contributory copyright infringement, and vicarious copyright

14   infringement." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). "[D]irect infringement

15   requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant."

16   *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). YouTube's "passive[]"

17   hosting of Creetosis' content cannot constitute "volitional" conduct. *Id.* at 668-70 (cleaned up);

18   *accord VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) ("direct copyright liability

19   for website owner[]" cannot arise from the "general operation of [its website]," but requires that

20   the website be "actively involved in the infringement").

21         Nor can YouTube be liable for secondary infringement here. Contributory liability exists

22   if a service "has actual knowledge that specific infringing material is available using its system,

23   and can take simple measures to prevent further damage … ***yet continues to provide access to***

24   ***infringing works***." *Giganews*, 847 F.3d at 671 (emphasis added). Vicarious liability only exists

25   when a platform "profit[s] from direct infringement while ***declining to exercise a right to stop or***

26   ***limit it.***" *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (emphasis added).

27         Stebbins alleges the opposite: that YouTube *removed* Creetosis' videos after it learned of

28   them through Stebbins' DMCA takedown notices, Compl. ¶¶ 42, 45, 47, aside from the four-part

1   Ducking Reaction series that "Creetosis deleted … before YouTube had enough time to process

2   the takedown request," *id.* ¶ 53. As another court held, YouTube's removal of allegedly infringing

3   videos after receiving a takedown notice precludes any prima facie infringement claim against it.

4   *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *6 (S.D.N.Y. Mar. 21, 2022)

5   (dismissing contributory and vicarious claims where plaintiff alleged that "YouTube actively

6   stopped [the uploader's] alleged infringement by taking the allegedly infringing videos down.").

7   ### B.    Stebbins Cannot Obtain Relief Without A Substantive Claim

8          Stebbins' failure to allege an actual claim against YouTube precludes his improper attempt

9   to include YouTube as a "nominal" defendant so that he can "obtain … injunctive relief" and

10   damages. Dkt. 4-1 at 2; *see also* Compl. ¶¶ 113, 152, 159-60. "An injunction is a remedy, not a

11   separate claim or cause of action," *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201

12   (E.D. Cal. 2010), and can only be "request[ed] … in connection with a substantive claim," *id.*,

13   which Stebbins does not assert here. *See also, e.g.*, *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F.

14   Supp. 2d 1012, 1028 (N.D. Cal. 2009) (dismissing injunction "claim"); *Alpha Inv., LLC v. Zynga,*

15   *Inc.*, 2012 WL 832447, at *5 (N.D. Cal. Mar. 12, 2012) (a plaintiff "may not plead an independent

16   claim for an injunction") (White, J.). The same is true of damages, which is "not a separate cause

17   of action, but rather a remedy for liability arising from a legal claim." *Whitehead v. Millennium*

18   *Films*, 2016 WL 7638185, at *3 (C.D. Cal. May 4, 2016).

19          Nor can Stebbins rely on Section 512(j) of the DMCA, 17 U.S.C. § 512(j), as a basis for

20   seeking a standalone injunction without a supporting claim. *See* Compl. ¶¶ 159. Section 512(j) is

21   a ***limit*** on the Court's power to enjoin, not an expansion, and only allows an injunction against a

22   service provider "after it is determined whether ***they are infringers in the first place*** under the

23   preexisting Copyright Act." *Tur v. YouTube, Inc.*, 2007 WL 4947612, at *2 (C.D. Cal. June 20,

24   2007) (citation omitted) (emphasis added); *accord Totally Her Media, LLC v. BWP Media United*

25   *States, Inc.*, 2015 WL 12659912, at *10 (C.D. Cal. Mar. 24, 2015) (similar). Here, Stebbins does

26   not allege that YouTube is an "infringer[] in the first place." *Tur*, 2007 WL 4947612, at *2. Nor

27   could he. *See supra* at 6-7. Section 512(j) thus has no application, and cannot be invoked to obtain

28   injunctive relief. *See Bus. Casual*, 2022 WL 837596, at *5 (dismissing similar injunction request

1    because YouTube removed the allegedly infringing content and thus did not infringe; "[t]he

2    DMCA safe harbors provide potential defenses against copyright infringement claims where, but

3    for the safe harbors, the plaintiff has a meritorious cause of action against the defendant for

4    copyright infringement.").[6]

5          **C.**     **Stebbins Dooms His Case By Admitting YouTube's "Safe Harbor Immunity"**

6         Even if Stebbins *did* allege infringement claims against YouTube, his admission that

7    "YouTube's safe harbor immunity … is undisputed" (Dkt. 4-1 at 2) for his remaining claims

8    requires dismissal with prejudice. *Id*. A motion to dismiss may be granted based on an affirmative

9    defense established from the complaint and "documents attached to the complaint, documents

10   incorporated by reference in the complaint, or matters of judicial notice," *Mashrique v. JPMorgan*

11   *Chase Bank, N.A.*, 2023 WL 3322572, at *3 (N.D. Cal. May 9, 2023), including, as here, an

12   attached cover letter, *see, e.g., Wallace v. Fed. Bureau of Prisons*, 2020 WL 4926539 (E.D. Ky.

13   Aug. 20, 2020) (dismissing on basis of IFP plaintiff's admission in screening cover letter). *See*

14   *also, e.g., Azadpour v. Sun Microsystems, Inc.*, 2007 WL 2141079, at *2 (N.D. Cal. July 23, 2007)

15   (dismissing claims where pro se plaintiff "admits in his [complaint] that these Defendants engaged

16   in no wrongdoing" because such "allegations" are "binding and a plaintiff can plead himself out

17   of court by pleading facts that undermine the allegations set forth in the complaint").

18         The relevant DMCA safe harbor, *see* 17 U.S.C. § 512(c), is an affirmative defense that

19   immunizes qualifying online services from copyright infringement liability for hosting user-

20   uploaded material. Stebbins pleads himself out of court by admitting YouTube's "safe harbor

21   immunity." Dkt. 4-1 at 2; *see also Long v. Dorset*, 369 F. Supp. 3d 939, 947 (N.D. Cal. 2019)

22   (dismissing copyright infringement claim where 512(c) safe-harbor defense was clear from face

23   of the complaint); *cf. Stebbins v. Rebolo*, 2024 WL 4982985, at *6 (N.D. Cal. Dec. 4, 2024)

24   (dismissing claim in screening order because "YouTube is protected by the DMCA's safe harbor").

25

---

26   [6] Stebbins' requested injunctions are also improper. The DMCA does not authorize injunctions
vaguely requiring YouTube to "remove all instances of infringement of [Stebbins'] copyright," or

27   to "prevent Creetosis from creating any new accounts," Compl. ¶¶ 159 (a)-(c). *See* 17 U.S.C. §
512(j)(1)(A)(i)-(iii). And an injunction can only issue as to "infringing activity" or "material" (*id.*),

28   but Creetosis' videos—which were already removed—are fair uses. *See infra* at 9-15.

## II.    CREETOSIS' LIVESTREAMS ARE FAIR USES OF STEBBINS' VIDEOS

The doctrine of fair use also precludes any copyright infringement claim against YouTube (and Creetosis). Stebbins cannot hold YouTube liable under any theory of infringement absent a showing of direct infringement by Creetosis. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 937 (9th Cir. 2010). Stebbins cannot make that showing because Creetosis' videos are quintessential non-infringing fair uses under Section 107 of the Copyright Act, which provides that "the fair use of a copyrighted work, including such use by reproduction in copies … for purposes such as criticism [or] comment, … is not an infringement of copyright." 17 U.S.C. § 107.

Although "fair use is a mixed question of fact and law," *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 49 (2021), courts routinely dismiss copyright infringement claims under Rule 12(b)(6) where fair use is apparent from the complaint and materials incorporated by reference and/or subject to judicial notice; here, that includes Stebbins' videos and Creetosis' reaction videos, which are described and hyperlinked in the Complaint. *See, e.g., Stebbins v. Alphabet*, 2025 WL 2233208, at *4 (granting fair use dismissal and considering Stebbins' and Creetosis' videos); *Stebbins v. Google*, 2023 WL 6139454, at *8 (similar).

Section 107 identifies four fair-use factors courts must consider: (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. "The four factors are to be considered together in light of the purposes of copyright, not in isolation." *Sony Comput. Ent't Am., Inc. v. Bleem*, *LLC*, 214 F.3d 1022, 1026 (9th Cir. 2000) (citation omitted). "Not all factors must be met in order for the Court to make a determination of fair use." *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, 2009 WL 2157573, at *4 (N.D. Cal. July 16, 2009).

Stebbins admits that the fair-use defense in this case is "effectively identical in merit" to the Related Case, Dkt. 26 ¶ 3, where this Court held that Creetosis' videos were "highly transformative" and "fair use as a matter of law," *Stebbins v. Alphabet*, 2025 WL 2233208, at *4-

5. *See also* Related Case, Dkt. 85 ¶ 9 (similar admission). This is confirmed by the content of Creetosis' videos, which are once again manifestly transformative fair-use criticism.

### A.    Creetosis' Videos Are Highly Transformative

The first factor considers "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). It asks "whether the new work merely 'supersede[s] the objects' of the original creation … or instead adds something new, with a further purpose or different character," making it "transformative." *Andy Warhol v. Goldsmith*, 598 U.S. 508, 527-29 (2023) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994)) (cleaned up). "[T]he more transformative the new work, the less will be the significance of other factors … that may weigh against" fair use. *Campbell*, 510 U.S. at 577. Section 107 "expressly permits fair use for the purposes of criticism and comment." *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1153 (9th Cir. 1986). If the "commentary has … critical bearing on the substance or style of the original" work, "the claim to fairness in borrowing" is especially strong. *Campbell*, 510 U.S. at 580.

The "transformative nature" of Creetosis' reaction videos "is evident in the [l]ivestreams themselves." *Stebbins v. Alphabet*, 2025 WL 2233208, at *4. As to Counts 2 and 3, Stebbins alleges that he created his "Dark Souls video" and "Elden Ring video" to "giv[e] my opinions about the video game[s]." Compl. ¶¶ 9, 11, 13. "While Plaintiff sought to critique the video game[s], Creetosis and the commentators in the" Dark Souls and Elden Ring Reaction videos "criticize Plaintiff's videos." *Stebbins v. Alphabet*, 2025 WL 2233208, at *4. As in the Related Case, Creetosis "air[s] the [Stebbins videos] for seconds at a time before pausing to respond and critique" and "mock[]" the videos. *Id*. During the paused reactions, the commentators "disagree with Plaintiff's opinions on the game[s]" and "certain factual contentions which Plaintiff makes" regarding the games, *id.* at *5, and discuss in extensive detail why those opinions are meritless and misguided, while also responding to real-time comments from the live audience. *See supra* nn.2-3. In the Dark Souls Reaction, Creetosis and the co-hosts also engage in constant back-and-forth commentary regarding their own views about the game (*supra* n.2), and criticize Stebbins' video-

1  editing choices (*id.*), including his "transitions" between clips and the "volume" of his background

2  noise. *Stebbins v. Alphabet*, 2025 WL 2233208, at \*5. In the Elden Ring Reaction, Creetosis is

3  especially critical of the merits of Stebbins' review of a game he never played. *Supra* n.3.

4      The four-part Ducking Reaction (Count 4) follows the same formula. In his Ducking Video,

5  Stebbins offers opinions about his feuds and lawsuits with Creetosis and other YouTubers who

6  have criticized Stebbins and his content. *See supra* n.5. In the Ducking Reaction videos, Creetosis

7  and the co-hosts criticize and mock Stebbins' accounting of those "real-life events" (Compl. ¶ 16)

8  across many hours of paused commentary, explaining their own opinions about the events in great

9  detail and why they believe Stebbins is an unreliable narrator and is misrepresenting the history

10  and nature of their criticism. *See supra* n.5. They also again repeatedly "criticize" and "mock[]"

11  Stebbins' video-editing choices, including his poor "transitions between video clips" and the

12  "volume of music." *Stebbins v. Alphabet*, 2025 WL 2233208, at \*5.

13      Such criticism and commentary in YouTube "reaction video[s]" is unquestionably

14  transformative, and is "at the heart of the fair use doctrine." *Id.* at \*5-6 (citing *Warhol*, 598 U.S. at

15  532); *accord Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 40, 45-46 (S.D.N.Y. 2017) (YouTube

16  "reaction video" was "quintessential" fair use because it "intersperse[d] relatively short segments

17  of [the plaintiff's] video with long segments of [the defendants'] commentary"); *Equals Three,*

18  *LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1104 (C.D. Cal. 2015) (finding transformative

19  use where video host "comment[ed] upon or criticize[d]" original videos to "highlight their

20  ridiculousness" and "directly mock[] the depicted events and people"); *City of Inglewood v.*

21  *Teixeira*, 2015 WL 5025839, at \*6, \*8 (C.D. Cal. Aug. 20, 2015) (granting motion to dismiss

22  where defendant's YouTube videos were "highly transformative" because they used portions of

23  plaintiff's videos "to comment on, and criticize [plaintiff's] political activities"); *Hughes v.*

24  *Benjamin*, 437 F. Supp. 3d 382 (S.D.N.Y. 2020) (similar); *Santos v. Kimmel*, 745 F. Supp. 3d 153,

25  164 (S.D.N.Y. 2024) (similar)

26      Stebbins alleges that factor one weighs against fair use because Creetosis received some

27  (minimal) donations while livestreaming. *See* Compl. ¶¶ 39, 44, 52. But it is (again) clear that

28  Stebbins' videos were "incidental in generating the revenues." *Stebbins v. Alphabet*, 2025 WL

2233208, at *5. For example, the $100 "super chat" donation in the Dark Souls Reaction that Stebbins identifies in his Complaint (¶ 39) was donated *before* Stebbins' video ever appeared on screen. *See* Hasnat Decl., Ex. A at 01:06:23. Regardless, any commercial benefit from these donations is again "outweighed by the highly transformative nature of the [l]ivestreams." *Stebbins v. Alphabet*, 2025 WL 2233208, at *5 (collecting cases). As before, "[t]his factor weighs sharply in favor of fair use." *Id.*

## B.    Stebbins' Videos Are Far from the Core of Copyright

The second factor concerns the "nature of the copyrighted work." 17 U.S.C. § 107(2). Courts "consider whether the [allegedly infringed] work is imaginative and original." *Hustler*, 796 F.2d at 1153-54. "The scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved." *Id.* "Likewise, unpublished works are entitled to greater copyright protection than published works." *Stebbins v. Alphabet*, 2025 WL 2233208, at *5.

The second factor weighs decidedly in favor of fair use because the "purpose" of Stebbins' videos "is informational in nature." *Stebbins v. Alphabet*, 2025 WL 2233208, at *5; *accord Stebbins v. Google*, 2023 WL 6139454, at *7 (video with Stebbins' voice-over "opinions" about "Dark Souls" game is "undoubtedly more informational than creative"). As in the Related Case, all of Stebbins' videos consist primarily of footage that Stebbins did not create, with his voice-over "opinions" about the games and his feuds with other YouTubers, which Stebbins concedes has only "minimum creative spark." Compl. ¶¶ 11, 13, 16; *see also, e.g.*, RJN ¶¶ 1 at 00:10:03-00:14:32 (Stebbins describing game storyline); 3 at 00:1:35-00:1:58 (describing fanbase); 5 at 00:01:18-00:03:50 (lawsuits against other YouTubers).

Moreover, Stebbins "published the video[s]" by publicly posting them to YouTube for the world to freely access, and pursuant to a license allowing YouTube to reproduce and display the video.[7] *Stebbins v. Alphabet*, 2025 WL 2233208, at *6; *see also* 17 U.S.C. § 101 (defining "publication"); *Brunson v. Cook*, 2023 WL 2668498, at *10, 12-14 (M.D. Tenn. Mar. 28, 2023) (holding "work was published when it was made available on YouTube" under the "YouTube

---

[7] *See* YouTube Terms of Service, "License to YouTube," https://www.youtube.com/static?template=terms (cited at Compl. n.2).

1    terms of use"); *cf. Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007)

2    ("Once Perfect 10 has exploited this commercially valuable right of first publication by putting its

3    images on the Internet for paid subscribers, Perfect 10 is no longer entitled to the enhanced

4    protection available for an unpublished work."). Because Stebbins' videos are "informational in

5    nature" and "published," "this factor weighs in favor of fair use." *Stebbins v. Alphabet*, 2025 WL

6    2233208, at *6

7         C.    **Creetosis' Uses Are Reasonable in Relation to the Transformative Purpose**

8         The third factor considers "the amount and substantiality of the portion used in relation to

9    the copyrighted work as a whole." 17 U.S.C. § 107(3). "[T]he extent of permissible copying varies

10   with the purpose and character of the use," and thus this inquiry "will harken back to the first of

11   the statutory factors." *Campbell*, 510 U.S. at 586–87. "[E]ntire verbatim reproductions are

12   justifiable where the purpose of the work differs from the original." *Mattel Inc. v. Walking Mt.

13   Prods.*, 353 F.3d 792, 803 n.8 (9th Cir. 2003) That is particularly true where the secondary use is

14   for transformative commentary or criticism. *Stebbins v. Alphabet*, 2025 WL 2233208, at *6.

15        Here, Creetosis' Dark Souls and Elden Ring Reaction videos allegedly play all of Stebbins'

16   (significantly shorter) videos, while each video in the four-part Ducking Reaction series plays only

17   a small portion of Stebbins' video. *See supra* at 3-6.[8] But all six reaction videos use Stebbins'

18   content in "short segments," and each "interspers[es]" extensive "commentary and critique along

19   the way," *Hosseinzadeh*, 276 F. Supp. 3d at 46, thus "further[ing] the [l]ivestream's

20   'transformative purpose,'" *Stebbins v. Alphabet*, 2025 WL 2233208, at *6 (citation omitted).

21   Because the use of Stebbins' content is "well-tailored" to Creetosis' "proper purpose," it is not

22   "dispositive" that two of Creetosis' videos allegedly play the "entirety" of Stebbins' original

23   videos. *Stebbins v. Alphabet*, 2025 WL 2233208, at *6. Indeed, the "clips" from Stebbins' videos

24   "and the commentators' live reactions thereto [are] essential to Creetosis's own creative works

25

26   _____

27   [8] Although Stebbins alleges that each of Creetosis' reaction videos copied "literally every single
     last second" of his videos, Compl. ¶¶ 28, 39, 52, that "claim is not 'literally' true," *Stebbins v.
28   Alphabet*, 2025 WL 2233208, at *6. For example, Part 1 of the Ducking Reaction "skip[s] some
     seconds" of Stebbins' video "when the commentators rewind and fast forward" the video. *Id.*; *see*
     Auster Decl. Ex. 1 at 01:20:50-01:21:23.

1    because the clips provided context. Without featuring the original clips, the [l]ivestreams would

2    have lost utility as critical commentary. The extensive copying was necessary to the critique." *Id.*;

3    *accord Campbell*, 510 U.S. at 586–87 ("extent of permissible copying" is greater when use is

4    transformative). This factor should also counsel in favor of fair use (or, at worst, is neutral).

5                **D.    Creetosis' Videos Do Not Affect Any Market for Stebbins' Videos**

6            The fourth factor concerns "the effect of the use upon the potential market for or value of

7    the copyrighted work." 17 U.S.C. § 107(4). It "consider[s] the secondary use's impact on the

8    market for the original work" and its derivatives. *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d

9    1273, 1280 (9th Cir. 2013). This factor is "the single most important element of fair use." *Oracle*,

10   593 U.S. at 50 n.5 (citation omitted). Importantly, "critique or commentary of the original work …

11   that kills demand for the original by force of its criticism … does not create a cognizable harm."

12   *Savage v. Council on American-Islamic Relations, Inc.*, 2008 WL 2951281, at *8 (N.D. Cal. July

13   25, 2008) (citing *Campbell*, 510 U.S. at 591-92). That is because "[c]opyright law is not designed

14   to stifle critics." *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986). Thus, the relevant question is

15   whether the secondary work "*fulfills the demand* for the original." *Id.* at 438.

16          In the Related Case, this "Court agreed with YouTube" that this factor strongly favors fair

17   use because Stebbins could not "plausibly" allege that a market existed for his video-game review

18   or that Creetosis' livestreams constituted "a market substitute." *Stebbins v. Alphabet Inc.*, 2025

19   WL 2233208, at *6. So too here. Stebbins does not and cannot plausibly allege a market exists for

20   videos of him discussing his opinions about games—including one he never played—and his feuds

21   with other YouTubers, especially since they are available for free on YouTube. But even if there

22   were a market, Creetosis' critical videos could not usurp it because they provide a "fundamentally

23   different viewing experience." *Id.* at *7. The Dark Souls Reaction intersperses playback of

24   Stebbins' 19-minute video with over *three-and-a-half hours* of critical commentary; the Elden

25   Ring Reaction reacts to Stebbins' four-minute video with over *fifty minutes* of biting criticism; and

26   the four-part Ducking Reaction critiques and mocks Stebbins' 22-minute video over *five hours*.

27   *See supra* at 3-6. "This criticism of and debate regarding the [Stebbins videos] serve[s] a different

28

purpose and provide[s] a significantly different viewing experience, and thus does not serve as a market substitute for the" videos themselves. *Stebbins v. Alphabet*, 2025 WL 2233208, at *7; *accord Hosseinzadeh*, 276 F. Supp. 3d at 47 (critical YouTube reaction video "does not" substitute for plaintiff's video and thus "does not (and indeed, cannot) 'usurp a [protectable] market'") (citation omitted).

Because the "factors weigh strongly in favor of fair use," Creetosis' videos are again fair uses "as a matter of law," and Stebbins' copyright infringement claims should thus be dismissed "with prejudice." *Stebbins v. Alphabet*, 2025 WL 2233208, at *7.

## CONCLUSION

YouTube respectfully requests that the Court dismiss Stebbins' Complaint with prejudice.

Dated: September 17, 2025       WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   /s/ *Jeremy P. Auster*
Jeremy P. Auster (*admitted pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
E-mail: jauster@wsgr.com

Laura Hernandez, State Bar No. 344641
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
E-mail: lhernandez@wsgr.com

*Counsel for Defendant YouTube, LLC*