David Stebbins (pro se Plaintiff)     123 W. Ridge Ave., APT D, Harrison, AR 72601     (870) 212-4947     acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                PLAINTIFF

VS.                              Case 3:25-cv-04499-JSW

JOHN DOE, d.b.a. CREETOSIS                                          DEFENDANTS

### OPPOSITION TO MOTION TO DISMISS

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Opposition to the Defendant's Motion to Dismiss in the above-styled action.

1. First, the Court should rule on the Motion to Strike the Defendant's Motion to Dismiss (Dkt. 48) before it rules on the Motion to Dismiss itself.

### Threshold for dismissal

2. In order for a complaint to be dismissed for failure to state a claim, it is a high burden, made especially higher considering that I am pro se. The Ninth Circuit has held that a district court "may only dismiss a pro se complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," and that "[ Ashcroft v.] Iqbal did not alter the rule that, where the petitioner is pro se, ... courts should construe the pleadings liberally and afford the petitioner the benefit of any doubt." See Wilhelm v. Rotman, 680 F. 3d 1113, 1121 (9th Cir. 2012).

3. This is an exceptionally high bar to clear, especially on the matter of fair use. The Court should keep this in mind as it reviews the Motion to Dismiss.

### YouTube is vicariously liable for its failure to reasonably implement its termination policy.

4. To qualify for safe harbor, an ISP must not only have, but also *reasonably implement*, a policy for terminating subscribers or account holders who are repeat infringers. Failure to reasonably implement a termination policy, even if such a policy technically exists on paper, has long been held to be grounds for a loss of safe harbor and, therefore, vicarious liability. See In re Aimster Copyright Litigation, 252 F. Supp. 2d 634 (ND IL 2002) (finding vicarious liability

where they had a termination policy on paper but failed to reasonably implement it). See also A&M Records Inc. v. Napster Inc., No. C 99-05183 MHP, (N.D. Cal. May. 5, 2000) (finding loss of safe harbor and thus vicarious liability when it failed to take reasonable steps to prevent a previously banned user from simply rejoining under a new account). See also BMG Rights Management v. Cox Communications, 881 F. 3d 293 (4th Cir. 2018) (finding loss of safe harbor, and thus vicarious liability, due to lack of reasonable implementation of a repeat infringer policy).

5. Here, in the complaint, I alleged the following facts:

(a) The individual who owns and operates the "Creetosis" YouTube channel accumulated three copyright strikes:

- Strike 1: On September 6, 2025 when his Dark Souls Reaction was removed. See Dkt. 4, ¶¶ 38-42.
- Strike 2: On September 7, 2025, when his Elden Ring Reaction was removed the first time. See Dkt. 4, ¶¶ 43-45.
- Strike 3: When he reposted his Elden Ring reaction and that got removed a second time. See Dkt. 4, ¶¶ 46-47.

(b) YouTube's termination policy states that those who acquire three copyright strikes are subject to termination.

(c) Despite meeting that objective threshold, Creetosis's multiple channels have not been terminated.

6. Remember that the Court must accept all three of these factual allegations as true for purposes of a motion to dismiss.

7. From these factual allegations, a reasonable trier of fact could find that, while YouTube may have, on paper, a policy of terminating repeat infringers (defining "repeat infringer" as someone who acquired three or more copyright strikes), they nevertheless failed to *implement* that policy in this case... which is a grounds for loss of safe harbor and vicarious liability the same as if they had failed to remove a video that was the subject of a proper DMCA Takedown Request.

8. Therefore, YouTube's arguments found on Pages 6-8 of their Motion to Dismiss should be rejected.

### Fair Use

9.     First, I hereby incorporate, by reference, all of the arguments and case law citations provided in response to the motion to dismiss in the related case.

10.    After that, the Court must remember the incredibly high threshold for dismissal at the pleading stage for failure to state a claim. It must be apparent that I "can prove no set of facts that would entitle me to relief." Although the case of Ashcroft v. Iqubal changed that standard for most cases, the old standard remains for pro se complaints. See Wilhelm, supra.

11.    So at this stage, it is not a question of whether this Court, at this moment in time, personally feels that the underlying reaction videos to be transformative; it's a question of whether any trier of fact[1], even after full discovery and full trial, would ever disagree that it is transformative.

12.    It is not a question of whether this Court, at this moment in time, personally feels that the Defendant's use of literally 100% of the original videos was reasonable, but whether any facts could surface during discovery or trial which would even nominally dispute that.

13.    It is not a question of whether this Court, at this moment in time, personally feels that the reaction videos are not market substitutes for the originals (while simultaneously failing to give any articulable facts), but whether there is a possibility that any facts could surface during discovery or trial which would even nominally dispute that.

### The uses are only nominally transformative and highly commercial

14.    While YouTube insists that each of these reactions are filled with multiple hours of criticism and commentary, but in fact, only a small portion of the original content actually qualifies as criticism. The vast majority of Creetosis's original content is just him and his co-hosts talking about whatever suits their fancy. "[T]he addition of new expression to an existing work is not a get-out-of-jail-free card that renders the use of the original transformative." See Dr. Seuss Enterprises, LP v. Comicmix LLC, 983 F. 3d 443 453 (9th Cir. 2020).

15.    In the related case, this Court ignored that argument entirely, and instead made the wholly arbitrary determination that the reaction stream in the related case was highly transformative simply because he, personally, felt it was. Even if that might be a valid determination after trial,

---

1   And that has the possibility to be a jury. After all, neither defendant has filed an answer yet, and it only takes one party to unilaterally demand a jury trial in order for all other parties to be roped into it.

it is wholly inappropriate in a motion to dismiss, where, at least regarding pro se complaints, the complaint must not be dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts that would entitle him to relief." See Wilhelm, supra.

16. Even barring that, the consideration of the first factor is not over. The reaction streams were undeniably commercialized, and YouTube makes no effort to argue against that. Therefore, the extent to which Creetosis allegedly "transformed" my videos must be weighed against the degree to which he monetized his reactions.

17. "[Defendant]'s minimal transformation of the [original works] is substantially undercut by its undisputed commercial use. On balance, the first factor is at best neutral, and does not support [Defendant]'s claim of fair use." See Monge v. Maya Magazines, Inc., 688 F. 3d 1164, 1177 (9th Cir. 2012).

18. Then again, the Court has already made up its mind. So what's the point?

### Amount & Substantiality of the Portion Used

19. The Defense used literally 100% of the original videos, literally every single last second of them. YouTube does not argue against that cast iron objective fact, instead insisting that it was "reasonable" that Creetosis used that much. As I explained in the related case,

20. In the related case, the Court – perhaps in a desperate attempt to make its ruling look like ever so slightly more based in fact than simply "it's fair use because I say so" – insisted that Creetosis didn't use literally 100% because he occasionally rewinded and rewatched some segments of the Fallout New Vegas video. Even if we assume that the Court can find a few times in the instant case when he did the same thing, that doesn't mean Creetosis didn't copy 100% of the original videos; that just means there were some parts of the original videos that he copied multiple times. Think about it: Can this Court point to any portion – even one single solitary second – of the original videos in the instant case that don't appear in Creetosis's reaction streams *at all*? If not, then he still copied 100% of them.

21. Because Creetosis copied literally 100% of the original works, the third factor must weigh against fair use as a matter of binding precedent. While it does not preclude fair use, per se, it does preclude the third factor from weighing in favor of fair use. See the citations I

provided in the related case.

22. In the related case, the Court also added that, even if Creetosis used 100% of the original video (which he absolutely did), the third factor would still weigh in favor of fair use "because the clips provide context." This is an egregious (if not blatantly intentional) misunderstanding of what the third factor even is. The Court seems to think (or is out and out lying when it implies) that the third factor is a wholly binary factor between using 100% or using 0%.

23. This is such a ridiculous position to take that I'm flabbergasted that I should even have to explain it. That's like a judge in a child abuse case siding with the defendant who gave his child over 100 lashes across the back with a leather belt on the grounds that the alternative was never to punish the child for anything. Like in that hypothetical (and patently absurd) case, the fact that the Court claims that the third factor is such a binary factor with no in between clearly demonstrates that the Court has already made up its mind about throwing out my cases (simply because David Stebbins is the Plaintiff) that he is literally willing to make up ridiculous facts out of thin air that have no basis in reality in order to justify his preset decision.

24. Even discounting the binding precedent that states that the third factor must weigh against fair use in the 9th Circuit if the secondary use copies 100% of the original, in order for the defense to hold out for the third factor favoring fair use, the Defense will have to prove that every bit that Creetosis used was strictly necessary to make his criticism, that if Creetosis had removed literally any portion of my original video, his criticism would cease to make sense.

25. Creetosis reacted to the videos "blind." That doesn't mean he wore a blindfold while watching them; it means that the reaction streams that are the subject of this case were the first time he had watched the original videos. However, that was a format that he personally chose; nobody forced him to do that format.

26. He could have easily removed significant portions of my original videos through the simple expedient of (1) watching the videos in private, (2) taking notes, (3) grouping multiple segments of the original videos together under a common theme (e.g. "times Acerthorn gets objective facts wrong about the game") and (4) writing sections of criticism dedicated exclusively to those groups of segments. This is how I typically handle my reviews of video

games; I separate my reviews into different sections dedicated to graphics, story, gameplay, controls, etc., and I only use footage from the games that are directly pertinent to my criticism of those sections.

27. Had he followed that format, or a similar format, when criticizing my videos, he could very easily have used significantly less than 100% of my original videos. He probably could have easily used 15% or less of my original, which, according to most "fair use checklists" you can find online, typically means that the third factor will presumably weigh in favor of fair use.

28. But he didn't. He assumed that, since he provided nominal criticism, that was all he had to do. But that is not how fair use works.

29. Therefore, the third factor weighs against fair use.

30. Then again, the Court has already made up its mind, so what's the point?

### Effect on the Market

31. In the related case, the Court gave absolutely no articulable facts to support its finding that the reaction stream was not a market substitute. It wasn't a market substitute solely because the Court, personally, didn't consider it to be. But as i explained in ¶¶ 2-3 and ¶¶ 9-12, that's not how a motion to dismiss is supposed to work.

32. The closest the Court came to offering any articulable facts to support its predetermined finding that the reaction wasn't a market substitute was its finding that my original video was still available for people to view if they wanted to. This is an absolutely preposterous reason to say that the reaction is not a market substitute. Think about it: If that were all it took to not create a market substitute, then there's literally no such thing as a market substitute, at least not in copyright law. At that point, the only way an infringer could possibly create a market substitute is if they actively interfered with the copyright holder's ability to sell his product himself, like if Creetosis had tried to stop me from hosting my video on my own channel, which would already be illegal under a different tort (most likely intentional interference with a business expectancy), so copyright law becomes completely superfluous.

33. Put simply, the reaction streams create a market substitute per se because they use literally 100% of the original videos, and they never play the clips out of order (aside from the

occasional rewind, which does not qualify as "playing clips out of order").

34. To prove this, think about it this way: Just what is a market substitute? Put simply, a market substitute is created when a reasonable person would see the secondary work, and then think to themselves "I've already seen the original work by dint of seeing this reaction, so there's no need for me to to go and watch the original anymore, since the reaction gives me both experiences."

35. Here's another analogy to help it make sense (since it's clear this Court needs it... assuming it isn't just out and out lying when it says the reactions aren't a market substitute): Having a driver's license versus having a state ID. As this Court (as well as literally every adult in the USA who isn't completely mentally incompetent) is surely aware, a driver's license does everything that a state ID does (providing identification for purposes of buying cigarettes, getting into adult-only venues, etc.), but it also grants its holder the right to operate a motor vehicle. In this regard, the driver's license is "transformative" over a state ID. It "adds value" by providing additional benefits that a state ID doesn't.

36. However, a driver's license is also a market substitute for an ID. If you have a driver's license, you *already have* an ID. It lets you do all the things that an ID lets you do. If you have a driver's license, there's absolutely zero reason to carry an additional ID. This isn't because you don't need an ID; you do indeed still need one if you want to buy tobacco or alcohol, or otherwise prove your age or identity in any way. Rather, you don't need a ***separate*** ID because the driver's license *is* your ID!

37. THAT is what a "market substitute" means under copyright law.

38. Another way of explaining this is by asking a simple question. Whereas the "transformative" element of fair use asks the question "What does the secondary use offer to viewers which the original does not" (a question which is often easily answered), the fourth factor asks the opposite question: What does the original offer to viewers that the secondary use does not?

39. When you think about it that way, you quickly realize that Creetosis's reactions of my videos fail to clear the bar. Because Creetosis showed my videos in their entirety, there is nothing the videos on my channel can offer to viewers that they can't get from watching Creetosis's

reactions to them.

40. In the related case, the Court found that those watching Creetosis's reactions will get a "different experience" than if they were watching my videos. But that alone is not dispositive. It is entirely possible for a copyrightable work to provide two experiences at the same time. That doesn't mean that the reaction streams aren't a market substitute because it still provides the experience that my original videos provide. The Dark Souls reaction, for instance, may provide his criticism of my criticism, whereas my video is criticism of the game, but his reaction to it still provides all of my criticism of the game, so the viewers get *both* experiences just by watching the reaction video.

41. And that is literally the very definition of "market substitute."

42. Therefore, the fourth factor weighs against fair use.

43. Then again, the Court has already made up its mind, so what's the point?

## CONCLUSION

44. Wherefore, premises considered, I respectfully pray that the Motion to Dismiss be denied (even though it won't be because the Court has already made up its mind) and for any other relief to which I may be entitled.

So requested on this, the 8th day of October, 2025.

*/s/ David Stebbins*
David Stebbins