LAURA HERNANDEZ, State Bar No. 344641
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: lhernandez@wsgr.com

JEREMY P. AUSTER (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jauster@wsgr.com

*Counsel for Defendant YouTube, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. STEBBINS,<br><br>  Plaintiff,<br><br>  v.<br><br>JOHN DOE et al.,<br><br>  Defendants. | Case No.: 4:25-cv-04499-JSW<br><br>**DEFENDANT YOUTUBE, LLC'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**<br><br>Judge: Jeffrey S. White<br>Date: November 14, 2025<br>Time: 9:00 A.M.<br><br>Action Filed: May 23, 2025 |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I.    STEBBINS HAS NO VIABLE CLAIMS AGAINST YOUTUBE .................................... 1

    A.    Stebbins Concedes That He Does Not And Cannot Assert Any Viable Infringement Claims Against YouTube .................................................................. 1

    B.    Stebbins Does Not Dispute That He Has Already Conceded YouTube's "Safe Harbor Immunity" ....................................................................................... 3

II.   CREETOSIS' LIVESTREAMS ARE FAIR USES OF STEBBINS' VIDEOS ................. 4

    A.    Creetosis' Videos Are Highly Transformative ........................................................ 5

    B.    Stebbins' Videos Are Far from the Core of Copyright ........................................... 7

    C.    Creetosis' Uses Are Reasonable in Relation to their Transformative Purpose ....... 7

    D.    Creetosis' Videos Do Not Affect Any Market for Stebbins' Videos ...................... 8

CONCLUSION ............................................................................................................................... 10

1-28 on left margin

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*A&M Recs., Inc. v. Napster, Inc.*,
  2000 WL 573136 (N.D. Cal. May 12, 2000) ................................................................... 3

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023) ........................................................................................................ 6

*Arista Recs. LLC v. Usenet.com., Inc.*,
  2008 WL 4974823 (S.D.N.Y. Nov. 24, 2008) ................................................................ 2

*Barker v. McFerran*,
  2024 WL 2031640 (N.D. Cal. May 6, 2024) .................................................................. 2

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) .......................................................................................... 3

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
  2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ............................................................. 2, 3

*Campbell Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) .................................................................................................... 6, 7

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020) .......................................................................................... 6

*Ellenberger v. Alphabet Inc.*,
  2021 WL 4808590 (N.D. Cal. July 19, 2021) ................................................................ 2

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ........................................................................................ 2

*Fisher v. Dees*,
  794 F.2d 432 (9th Cir. 1986) .......................................................................................... 8

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021) ............................................................................................................ 5

*Hebbe v. Pliler*,
  627 F.3d 338 (9th Cir. 2010) .......................................................................................... 4

*Hosseinzadeh v. Klein*,
  276 F. Supp. 3d 34 (S.D.N.Y. 2017) ........................................................................... 7, 9

*In re Harris*,
  596 F. App'x 581 (9th Cir. 2015) ................................................................................... 4

*Lee v. Washington*,
  690 F. App'x 974 (9th Cir. 2017) ................................................................................... 4

*Mattel Inc. v. Walking Mt. Prods.*,
  353 F.3d 792 (9th Cir. 2003) .......................................................................................... 7

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ............................................................................................... 6

*Ouellette v. Viacom*,
    2011 WL 1882780 (D. Mont. Mar. 31, 2011), *report and recommendation
    adopted*, 2011 WL 1883190 (D. Mont. May 17, 2011) ................................................... 2, 3

*Santos v. Kimmel*,
    745 F. Supp. 3d 153 (S.D.N.Y. 2024),
    *aff'd*, --- F.4th ---, 2025 WL 2825050 (2d Cir. Oct. 6, 2025) ............................................. 8

*Savage v. Council on Am.-Islamic Rels., Inc.*,
    2008 WL 2951281 (N.D. Cal. July 25, 2008) ..................................................................... 8

*Stebbins v. Alphabet Inc.*,
    2025 WL 2233208 (N.D. Cal. July 2, 2025) ............................................................. *passim*

*Stebbins v. Google LLC*,
    2023 WL 6139454 (N.D. Cal. Aug. 31, 2023) ................................................................ 8, 9

*Thiccc Boy Prods. Inc. v. Swindelle*,
    2024 WL 733425 (D.R.I. Feb. 22, 2024) ............................................................................ 9

*Ventura Content, Ltd. v. Motherless, Inc.*,
    885 F.3d 597 (9th Cir. 2018) ............................................................................................... 4

*Wilhelm v. Rotman*,
    680 F.3d 1113 (9th Cir. 2012) ............................................................................................. 4

**STATUTES**

17 U.S.C. § 512(i)(1)(A) ................................................................................................................ 2

17 U.S.C. § 512(c) ......................................................................................................................... 2

17 U.S.C. § 512(j) .......................................................................................................................... 2

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................................. 4

**INTRODUCTION**

Stebbins' Opposition (Dkt. 54) cannot salvage his improper attempt to burden YouTube as a so-called "nominal" defendant in his latest misguided copyright lawsuit against "Creetosis."

YouTube's Motion (Dkt. 45, "Mot.") explained that Stebbins does not assert any of his remaining copyright infringement claims against YouTube, that he has no basis for doing so (since he admits YouTube "removed" Creetosis' videos and that its "safe harbor immunity … is undisputed"), and that he cannot cast YouTube as a "nominal" defendant or obtain relief absent a substantive claim. Mot. at 6-8. The Opposition does not dispute, and thus concedes, each of these arguments, which require dismissal of YouTube with prejudice. Stebbins' last-ditch attempt to invent an affirmative cause of action under the Digital Millennium Copyright Act ("DMCA")— based on YouTube's alleged failure to terminate Creetosis' channel—is no salvation, because there is no such claim in the law.

Even if Stebbins had accused YouTube of infringement, his claims would still need to be dismissed because Creetosis' reaction videos are non-infringing fair uses of Stebbins' videos, as confirmed by the relevant materials that are now properly before the Court (without any opposition from Stebbins). *See* Mot. at 9-15; Dkts. 45.1-45.15, 46. In his "argument" in opposition, Stebbins ignores all of the case law that YouTube cited, relies on made-up legal principles, and repeatedly hurls invective at this Court for its order dismissing Stebbins' self-described "identical" (Dkt. 26 ¶ 3) claims in the Related Case.[1] But that order was legally sound and its reasoning applies with equal force to Creetosis' videos here, which are again "fair use as a matter of law." *Stebbins v. Alphabet Inc.*, 2025 WL 2233208, at *4-6 (N.D. Cal. July 2, 2025). This Court should dismiss Stebbins' vexatious copyright complaint with prejudice.

**ARGUMENT**

**I.    STEBBINS HAS NO VIABLE CLAIMS AGAINST YOUTUBE**

    **A.    Stebbins Concedes That He Does Not And Cannot Assert Any Viable Infringement Claims Against YouTube**

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in YouTube's Motion.

1    Stebbins does not dispute that his remaining copyright infringement claims are alleged solely against Creetosis, and that he has no factual basis for charging YouTube with direct or secondary infringement. *See* Mot. at 6-7. Nor does Stebbins dispute that his attempt to include YouTube as a "nominal" defendant in this case is improper, and that he cannot obtain damages or injunctive relief from YouTube—under Section 512(j) of the DMCA or otherwise—without a substantive claim. *Id.* at 7-8. These arguments—which Stebbins entirely ignores and thus concedes—require dismissal with prejudice. *See, e.g., Barker v. McFerran*, 2024 WL 2031640, at *6 (N.D. Cal. May 6, 2024) (dismissing claim where "Plaintiff does not address [defendant's] argument in her opposition and thereby concedes it"); *Ellenberger v. Alphabet Inc.*, 2021 WL 4808590, at *3 (N.D. Cal. July 19, 2021) (pro se plaintiff "effectively conceded the merits of the motion to dismiss by failing to address Defendant's arguments in favor of dismissal").

Stebbins' only answer is to claim that YouTube's alleged failure to terminate Creetosis' YouTube channel pursuant to its "policy for terminating … repeat infringers" is "grounds for a loss of [the DMCA] safe harbor and, therefore, vicarious liability." Opp. ¶ 4. This argument is wrong as a matter of law because it "misconstrues the safe harbor provisions of the DMCA and how they interact with the other federal copyright laws." *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *5 (S.D.N.Y. Mar. 21, 2022) (rejecting identical argument and dismissing infringement claims against YouTube). To qualify for safe-harbor protection under Section 512(c) of the DMCA, 17 U.S.C. § 512(c), a service provider must satisfy certain threshold statutory requirements, including by "adopt[ing] and reasonably implement[ing]" a policy for terminating the accounts of "repeat infringers" in "appropriate circumstances," *id.* § 512(i)(1)(A). "But alleged failures to satisfy the conditions of a DMCA safe harbor provision cannot constitute a cause of action without a viable underlying claim for copyright infringement." *Bus. Casual*, 2022 WL 837596, at *5; *accord Arista Recs. LLC v. Usenet.com., Inc.*, 2008 WL 4974823, at *4 (S.D.N.Y. Nov. 24, 2008) ("The DMCA does not provide an affirmative cause of action," but rather "'limitations of liability … if the provider is found to be [already] liable under existing principles of law.'") (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076-77 (9th Cir. 2004)); *Ouellette v. Viacom*, 2011 WL 1882780, at *6-7 (D. Mont. Mar. 31, 2011) (explaining that "[t]he

procedures established by the DMCA … do not create liability that does not already exist independent of the DMCA," and dismissing claim against YouTube where pro se plaintiff's "allegations … do not invoke any independent theory of liability"), *report and recommendation adopted*, 2011 WL 1883190 (D. Mont. May 17, 2011).

Here, as Stebbins concedes, he does not and cannot assert "a viable underlying claim for copyright infringement" against YouTube, so "whether YouTube is prevented from taking advantage of a DMCA safe harbor because it has failed to comply with the DMCA's repeat infringer provision is immaterial." *Bus. Casual*, 2022 WL 837596, at *5. The cases Stebbins cites are inapposite (Opp. ¶ 4), because in each of them the plaintiffs *did* assert claims for contributory and vicarious infringement against the defendant, resulting in the defendant's invocation of a DMCA safe harbor and consideration of their repeat infringer policies. *See A&M Recs., Inc. v. Napster, Inc.*, 2000 WL 573136, at *1 (N.D. Cal. May 12, 2000) (accusing Napster of contributory and vicarious infringement for allowing users to share and download unauthorized copies of MP3 music files); *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) (similar). Those plaintiffs did not seek to do what Stebbins improperly attempts here—to invent an affirmative claim under the DMCA. *Bus. Casual*, 2022 WL 837596, at *5.

There is no basis for any affirmative claim against YouTube. Stebbins' attempt to sue YouTube as a "nominal" defendant should therefore be rejected, and YouTube should be dismissed with prejudice.

### B. Stebbins Does Not Dispute That He Has Already Conceded YouTube's "Safe Harbor Immunity"

YouTube's Motion explained that even if Stebbins did allege copyright infringement claims against YouTube, his admission that "YouTube's safe harbor immunity … is undisputed" (Dkt. 4-1 at 2) for his remaining claims requires dismissal. Mot. at 8. The Opposition says nothing about Stebbins' admission and ignores YouTube's argument, once again conceding it. *See supra* at 2. Instead, Stebbins appears to try to walk back his admission by suggesting that YouTube's alleged failure to terminate Creetosis' channel forecloses any safe harbor defense. Opp. ¶¶ 4-7. This Court has repeatedly rejected Stebbins' now well-worn tactic of attempting to "reverse

positions in order to save his claims," *Stebbins v. Alphabet*, 2025 WL 2233208, at *4, and should do the same here. Regardless, Stebbins' argument again misconstrues the DMCA—"the repeat infringer policy requirement does not focus on the particular infringement at issue," here, Creetosis' Dark Souls and Elden Ring reaction videos (Opp. ¶ 5), but rather "addresses how the [defendant's] site is generally managed," *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 614 (9th Cir. 2018). Stebbins does not (and could not) allege that, as a general matter, YouTube has failed to "reasonably implement a policy of terminating in appropriate circumstances users who were repeat infringers." *Id.* Stebbins' admission of "YouTube's safe harbor immunity" is yet another basis for dismissing YouTube with prejudice. Mot. at 8.[2]

## II.     CREETOSIS' LIVESTREAMS ARE FAIR USES OF STEBBINS' VIDEOS

The Opposition also fails to meaningfully dispute that Creetosis' livestream videos are transformative fair uses. Stebbins does not deny that he has already conceded that the videos are "effectively identical" to Creetosis' reaction videos in the Related Case, Dkt. 26 ¶ 3, which this Court held were "highly transformative," "at the heart of the fair use doctrine," and "fair use as a matter of law." *Stebbins v. Alphabet*, 2025 WL 2233208, at *4-6. And, as in the Related Case, Stebbins ignores all of YouTube's authority and does not "point to any courts which have applied fair use principles to similar reaction videos and reached a different outcome." Related Case, Dkt. 90 (Order Denying Motion to Certify Interlocutory Appeal) at 3. Instead, Stebbins offers only conclusory assertions, made-up legal standards, and wild analogies, and repeatedly disparages the Court for its "egregious" dismissal order in the Related Case and for having "already made up its mind about throwing out my cases." Opp. ¶¶ 18, 22-23, 30, 43-44. Stebbins' digressions and

---

[2] Stebbins relies on *Wilhelm v. Rotman*, which discusses the requirement to "construe pro se complaints liberally" post-*Iqbal*. 680 F.3d 1113, 1121 (9th Cir. 2012) (cleaned up). But *Wilhelm* does not hold that pro se plaintiffs need not plausibly allege their claims under Rule 8. And the Ninth Circuit has consistently held that they must. *See, e.g.*, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("we continue to construe *pro se* filings liberally **when evaluating them under *Iqbal*.**") (emphasis added); *Lee v. Washington*, 690 F. App'x 974, 974 (9th Cir. 2017) (affirming dismissal of pro se complaint where plaintiff "failed to allege facts sufficient to state a plausible [] claim") (citing *Hebbe*, 627 F.3d at 341-42); *In re Harris*, 596 F. App'x 581, 583 (9th Cir. 2015) (same). Regardless, even the most liberal construction of Stebbins' Complaint cannot help him, because he asserts no claims against YouTube, concedes he has no basis for doing so, admits YouTube's "safe harbor immunity," and is again suing over fair-use criticism (*infra* at 5-9).

1 invective do not rescue his claims, which once again target manifestly transformative fair-use criticism.

### A. Creetosis' Videos Are Highly Transformative

The Opposition offers virtually nothing of substance on the first factor of the fair-use analysis. Stebbins concedes that Creetosis' videos are "transformative," but asserts in conclusory fashion that they provide only "nominal criticism" because "only a small portion of the original content actually qualifies as criticism." *Id.* ¶¶ 14, 27-28. Notably, Stebbins does not cite a single segment of any of Creetosis' videos to back up his claims. *See id.* Nor does he have any response to YouTube's laundry list of representative examples of highly transformative criticism and commentary in each video. *See* Mot. at 3-5, nn. 2-3, 5. As in the Related Case, the transformative nature of the Videos "is evident in the [l]ivestreams themselves," *Stebbins v. Alphabet*, 2025 WL 2233208, at *4, and can be readily observed from even a cursory review: the Court can press "play" at virtually any point in any of the videos and (again) observe the alternating segments of brief playback of Stebbins' videos followed by much longer portions of responsive criticism and commentary. Stebbins' conclusory say-so cannot alter that reality.

Stebbins also badly misses the mark by claiming that Creetosis' "addition of new expression," in the form of the extensive back-and-forth commentary between "him and his co-hosts," does not render Creetosis' videos "transformative." Opp. ¶ 14. The opposite is true. These discussions "add[] something new, with a further purpose or different character," by "altering [Stebbins'] copyrighted [videos]" through the interspersion of the commentators' own "new expression, meaning or message" about the game Stebbins is reviewing (Dark Souls Reaction video) and the real-life events he is discussing (Ducking Reaction video). *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 29 (2021) (cleaned up). As in the Related Case, the "commentator's unrefined responses, frequent cross-chatter, and engagement with a live virtual audience" all contribute to the "highly transformative" nature of the videos that Creetosis co-hosted. *Stebbins v. Alphabet*, 2025 WL 2233208, at *5. The same is true of Creetosis' Elden Ring Reaction video, which he hosts by himself but similarly includes *53* minutes of responsive commentary and "new expression" interspersed among playback of Stebbins' four-minute video. *Id.* at *4. Courts

addressing analogous reaction videos interspersed with commentary and criticism have uniformly held that such videos are transformative, including in the Related Case. *See* Mot. at 10-11 (collecting cases). That should be the end of the analysis.

Stebbins' argument also finds no support in the sole case that he passingly cites. In *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020), the Ninth Circuit held that the defendant's "mash-up" book—which copied elements of various Dr. Seuss books and used the "Seussian landscape" as a setting for a Star Trek story—was not transformative because the defendant's book did not "critique[] or comment[]" on the Dr. Seuss works or have any "critical bearing on the[ir] substance or style," *id.* at 449, 452-53 (quoting *Campbell Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994)), but instead "paralleled" their purpose by "propounding the same message" and story-telling themes, *id.* at 454. Here, in contrast, it is indisputable that the purpose of Creetosis' videos is to comment on and criticize Stebbins' videos, and their substantial critical bearing on the "substance" and "style" of Stebbins' videos place them "at *Campbell*'s [highest] ebb" of transformativeness. *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 530, 546 (2023).

As for the "commercial use" element of factor one, Stebbins cites *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012), which is also inapposite. In *Monge*, the Ninth Circuit held that the first factor did not favor fair use where a celebrity gossip magazine published a "wholesale copy[]" of the plaintiffs' unpublished wedding photos but did not "comment on" the original photos or add any "new expression, meaning or message," rendering the for-profit magazine's "undisputedly commercial [] nature" more important to the factor-one analysis. *Id.* at 1175-77 (citations omitted; cleaned up). Unlike the wedding photos in *Monge*, Creetosis' videos are highly transformative, thus minimizing the relevance of any alleged (and minor) commercial benefit to Creetosis. As in the Related Case (which Stebbins does not attempt to distinguish), any commercial benefit to Creetosis is again "outweighed by the highly transformative nature of the [l]ivestreams," and "[t]his factor weighs sharply in favor of fair use." *Stebbins v. Alphabet*, 2025 WL 2233208, at *5.

### B. Stebbins' Videos Are Far from the Core of Copyright

Stebbins' Opposition ignores the second factor altogether, and thus concedes what is incontestable—"this factor weighs in favor of fair use" because Stebbins' "published" videos are "informational in nature," *id.* at *6, and far from the "core of intended copyright protection," *Campbell*, 510 U.S. at 586.

### C. Creetosis' Uses Are Reasonable in Relation to their Transformative Purpose

Stebbins' argument on the third fair-use factor misrepresents Creetosis' videos and the law. Stebbins falsely suggests that all of Creetosis' videos "copied literally 100%" of his videos (Opp. ¶ 21), even though each video in Creetosis' four-part Ducking Reaction series plays only a small portion of Stebbins' video. Mot. at 5-6.

On the law, Stebbins fails to acknowledge that "quantity alone is not determinative" of the factor-three analysis, *Stebbins v. Alphabet*, 2025 WL 2233208, at *6 (quoting *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 46 (S.D.N.Y. 2017)), and that even "entire verbatim reproductions are justifiable where the purpose of the work differs from the original." *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 803 n.8 (9th Cir. 2003); *see also Campbell*, 510 U.S. at 586–87 ("extent of permissible copying" is greater if the purpose is transformative). Here, just like the Related Case, the use of Stebbins' content in all six of Creetosis' reaction videos is "well-tailored" to Creetosis' "proper" and "transformative purpose of critical commentary," and thus it is not "dispositive" that two of Creetosis' videos (the Dark Souls and Elden Ring reactions) allegedly play the "entirety" of Stebbins' original. *Stebbins v. Alphabet*, 2025 WL 2233208, at *6 (cleaned up).

Stebbins' response is to deride the Court's analysis in the Related Case (without citing any contrary law), Opp. ¶¶ 20, 22, to concoct an irrelevant analogy about whipping children, *id.* ¶ 23, and to invent his own factor-three standard, claiming that YouTube must "prove that every bit that Creetosis used was strictly necessary to make his criticism, that if Creetosis had removed literally any portion of my original video, his criticism would cease to make sense," *id.* ¶ 24. Stebbins cites no authority for his made-up standard. Regardless, Stebbins is wrong. The question is not whether Creetosis' videos "would cease to make sense" if Creetosis removed "literally any portion" of Stebbins' videos (whatever that means). Rather, this factor asks whether Creetosis' uses were

"well-tailored" (or justifiable) in light of the transformative purpose of the videos. *Stebbins v. Alphabet*, 2025 WL 2233208, at *6. This Court already correctly answered that question in the affirmative in the Related Case, and this case is no different (as Stebbins admits). Given the nature of Creetosis' livestreams—which react to the *entirety* of Stebbins' videos through brief segments of video playback followed by directly responsive commentary and criticism—Creetosis' uses of Stebbins' videos were "well-tailored" to the transformative purpose because "the clips provided context," and "[w]ithout featuring the original clips, the [l]ivestreams would have lost utility as critical commentary." *Id*. As a result, the third factor favors fair use or is at worst neutral. *See id.*; *see also, e.g.*, *Santos v. Kimmel*, 745 F. Supp. 3d 153, 166 (S.D.N.Y. 2024) (finding third factor neutral where defendant used plaintiff's videos "in their entirety" but "the use was transformative"), *aff'd*, --- F.4th ---, 2025 WL 2825050 (2d Cir. Oct. 6, 2025) (affirming fair-use dismissal).

### D. Creetosis' Videos Do Not Affect Any Market for Stebbins' Videos

Stebbins does not dispute that there cannot plausibly exist a commercial market for videos of him discussing his opinions about games—including one he never played—and his feuds with other YouTubers, especially since they have been available for free on YouTube for years. Nor does he suggest that there could exist any market for derivatives of his videos. That alone resolves the fourth factor, because Creetosis' reaction videos cannot usurp a market that does not exist. *See Savage v. Council on Am.-Islamic Rels., Inc.*, 2008 WL 2951281, at *9 (N.D. Cal. July 25, 2008) (fair use where "plaintiff fail[ed] to allege … that plaintiff currently has, or ever had, any kind of market for the copyrighted work ….").

Stebbins' only response is to argue (as he did in the Related Case) that Creetosis' videos "create a market substitute per se because they use literally 100% of the original videos." Opp. ¶ 33. Besides being factually inaccurate (*supra* at 7), and confusing this factor with the third, that is simply not the test. Instead, the question is whether Creetosis' videos "fulfill[] the demand" for Stebbins' videos. *Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir. 1986); Mot. at 14. And it is "not reasonable to suggest that the allegedly infringing" videos could have "any significant effect on" any imagined market for Stebbins' videos. *Stebbins v. Google LLC*, 2023 WL 6139454, at *8 (N.D.

1  Cal. Aug. 31, 2023). No one desirous of watching *Stebbins'* videos and hearing *Stebbins'* opinions
2  would ever endeavor to watch those videos in innumerable seconds-long segments spread across
3  Creetosis videos that are many hours longer and overwhelmingly composed of *Creetosis'* (and his
4  co-hosts') critical commentary and opinions. *See* Mot. at 14-15. Stebbins implausibly argues
5  otherwise, claiming that this factor must weigh against fair use because "there is nothing the videos
6  on my channel can offer to viewers that they can't get from watching Creetosis's," since "Creetosis
7  showed my videos in their entirety." Opp. ¶ 39. But whether viewers can in some sense "get" all
8  of Stebbins' content by watching Creetosis' immensely longer videos is not the relevant inquiry.
9  The question is whether Creetosis' videos could fulfill demand for or usurp a market for Stebbins'
10 videos. Where, as here, secondary uses in the form of critical reaction videos "serve a different
11 purpose" and provide a "fundamentally different viewing experience" than an original work, courts
12 consistently hold that they do not and cannot fulfill demand for the original or constitute a "market
13 substitute." *Stebbins v. Alphabet*, 2025 WL 2233208, at *7; *accord Hosseinzadeh*, 276 F. Supp.
14 3d at 47 (reaction video that turned original video "into fodder for caustic, moment-by-moment
15 commentary and mockery" provides "a very different experience" and thus "does not (and indeed,
16 cannot) 'usurp a [protectable] market'") (cleaned up); *Thiccc Boy Prods. Inc. v. Swindelle*, 2024
17 WL 733425, at *1, *3, *5 (D.R.I. Feb. 22, 2024) (fourth factor favored fair use where YouTube
18 reaction videos that "function[ed] as criticism or commentary" of plaintiff's YouTube videos were
19 "unlikely to function as substitutes for the copyrighted videos in their original and potential
20 derivative markets" in "a way cognizable" under the Copyright Act); *Kimmel*, --- F.4th ---, 2025
21 WL 2825050, at *2 (defendant's use of the entirety of plaintiff's videos in television segments for
22 the purpose of "criticism and commentary" "has not [caused plaintiff to] suffer[] market harm
23 within the meaning of the fourth fair use factor").

24      The fact that Creetosis' videos are (again) non-infringing fair uses "as a matter of law" is
25 yet another reason why Stebbins' Complaint against YouTube should be dismissed "with
26 prejudice." *Stebbins v. Alphabet*, 2025 WL 2233208, at *7 (dismissing infringement claims against
27 YouTube (and Creetosis) with prejudice); *Stebbins v. Google*, 2023 WL 6139454, at *8 (same as
28 to Google).

## CONCLUSION

YouTube respectfully requests that the Court dismiss Stebbins' Complaint with prejudice.

Dated: October 22, 2025

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Jeremy P. Auster*
Jeremy P. Auster (*admitted pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
E-mail: jauster@wsgr.com

Laura Hernandez, State Bar No. 344641
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
E-mail: lhernandez@wsgr.com

*Counsel for Defendant YouTube, LLC*